## Zeigler *versus* Shomo.

1. An assignment of a bankrupt's land by a register to an assignee in bankruptcy, not acknowledged or proved, as required by the laws of Pennsylvania, cannot be recorded in that state.

2. From the commencement of proceedings in bankruptcy the estate of the bankrupt is in the custody of the District Court of the United States; its jurisdiction is superior and conclusive and its decrees final and absolute.

3. A purchaser at an assignee's sale of a bankrupt's property under an order of the District Court and decree confirming it, is not bound to see that every particular in the appointment and qualification of the assignee has been complied with; he takes whatever title was in the bankrupt.

4. Land was sold as a bankrupt's; in ejectment against him by the purchaser, he defended on the ground that the right of possession was in his wife when the writ was served. If the wife had no title, her possession was that of her husband and the defence could not be sustained.

5. Evidence in this case not sufficient to show that an absolute deed to husband was in trust for his wife.

June 1st 1875. At Harrisburg. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Schuylkill county:* Of July Term 1874, No. 17.

This was an action of ejectment commenced May 27th 1869, by William D. Shomo against Elijah W. Zeigler for a tract of land of 113 acres and 60 perches.

The case was tried November 6th 1873, before Walker, J.

The plaintiff gave in evidence the writ with return of personal

[Zeigler *v.* Shomo.]

service on E. W. Zeigler. Also, deed January 19th 1835, from Reuben Swartz to Abraham Turner, for the land described in the writ. Also, assignment May 15th 1851, endorsed on the deed, Turner to the defendant in fee, consideration $2000, for the premises mentioned in the deed, with receipt of Turner for the purchase-money appended. Also, petition of creditors of Zeigler, filed September 21st 1867, to the District Court of the United States, Eastern District of Pennsylvania, to have him adjudged a bankrupt, and the adjudication October 12th 1867 ; November 5th 1867, Jacob H. Pyle chosen assignee.

The plaintiff then offered in evidence a copy of the record from the recorder's office of Schuylkill county, of assignment of the property of Zeigler, dated November 8th 1867, by John P. Hobart, register in bankruptcy, to Jacob H. Pyle, assignee, executed under the seal of the District Court. The defendant objected, because the assignment was not acknowledged or proved in accordance with the requirements of the Acts of Assembly. The court admitted the offer and sealed a bill of exceptions.

. On the 18th of January 1868, Pyle, the assignee, petitioned the register for authority to sell the premises, and on the same day he was authorized by the register to make public sale of the premises on the 15th of February then next, upon the conditions and after the publications specified in the order of sale. The assignee returned that he had exposed the premises to sale in accordance with the order, but that they remained unsold because a sufficient sum was not bid for them. On the 27th of January 1869, Pyle, the assignee, petitioned the District Court, setting out amongst other things the order of sale, that he had been unable to sell the land, because the title was in dispute ; that Hezekiah Turner gave notice that he claimed to be the owner, by virtue of a devise to him by Abraham Turner ; that Priscilla Zeigler, wife of the bankrupt, gave notice that the title was in Abraham Turner and Susanna his wife, when he was declared bankrupt ; also, that the same Priscilla Zeigler gave notice that she claimed right of dower in case it should be made to appear the title to the premises was in the bankrupt ; that the petitioner had been offered $1000 for the bankrupt's interest in the land, with an engagement to bid that sum if a sale should be ordered ; and inasmuch as the title was in dispute, he prayed that an order of sale might be issued to him, &c. An order was accordingly awarded to sell the bankrupt's right in the premises, on the 13th of March then next, notice to be given by publications specified in the order.

On the 24th of March the assignee made return : that having given notice by publications as directed in the order, he sold the bankrupt's interest in the premises to William D. Shomo for $1020, accompanied by certificate of the register's approval and recom-

mendation that it be confirmed ; the sale was confirmed March 29th 1869.

The plaintiff then offered in evidence the deed from the assignee to Shomo, dated April 3d 1869, acknowledged same day before a justice of the peace of Schuylkill county, and recorded in the recorder's office of Schuylkill county.

The defendant objected to the evidence, because it appeared that the bankrupt had no title to the land, and the question of title should be first judicially decided ; the deed was not acknowledged before the register in bankruptcy, and it did not appear by it that the advertisements, &c., were made in accordance with the order, &c.

The court admitted the evidence and sealed a bill of exceptions. The plaintiff then rested.

The defendants offered in evidence a deed dated August 5th 1852, from which the names had been cut, from E. W. Zeigler and wife to Abraham Turner, granting, for the consideration of $2000, the premises in dispute, reciting that they were the same which Swartz had granted to Turner and Turner had granted to Zeigler May 15th 1851.   Appended to the deed, was a regular acknowledgment of Zeigler and wife before J. Kistler, justice of the peace, on the day of the date of the deed—this not being mutilated.

Defendant called Kistler, who proved the acknowledgment.

Zeigler testified to the same fact, and also that with consent of Turner he had cut off the signatures about two years afterwards ; they were cut off on account of a new agreement with Turner.

Under objection by plaintiff the court admitted the deed in evidence.

On cross-examination, Zeigler testified that an agreement of February 26th 1873, shown to him, was made before the names were cut off ; they agreed that by cutting off the names the title would be put back where it was before the deed was made ; at the time the names were cut off Turner said he would rather leave the old deed just as it was, that this would be better to secure his daughter's (Zeigler's wife) interest ; they then agreed to cut off the names.

Defendant gave in evidence articles of agreement of July 28th 1852, between Zeigler and Turner, for the sale of the land and for its conveyance to Turner on the 5th of August 1852. The consideration was $2000, of which $500 were to be paid on the delivery of deed, $500 April 1st 1853, and the remainder on the 1st of April 1854.

Defendant gave in evidence the notice by Mrs. Zeigler, to the assignee " and all buyers and bidders," at the assignee's sale of the bankrupt's land, viz. : that the bankrupt had no title or right whatever to the property ; that Turner, by assignment of May 15th 1851, in consideration of $2000 and advancement to

Mrs. Zeigler, wife of the bankrupt, by her father the said Turner, and the performance of certain stipulations of an agreement of May 15th 1851, had conveyed the property to the bankrupt; that the said bankrupt and his wife, by deed of August 5th 1852, in consideration of $2000, conveyed the property to Turner; that the signatures of the bankrupt and his wife had been cut from the deed, but there had been no reconveyance from Turner and therefore the title was not in the bankrupt, &c.

E. W. Ziegler further testified that he was not in the possession of the property; but he was there when the writ was served; his wife was in possession at the time; she was there with some of the children; he lived then at a hotel one-fourth of a mile distant. She claimed the property as an heir of Abraham Turner, who had died in 1863; the $2000 mentioned in the receipt were intended as a gift from Turner to his daughter, defendant's wife, witness paid nothing of it. Turner valued the property at $4000; he said he would divide his property equally amongst his children; he did so at the time of this first transaction; he gave his son a farm adjoining, valued at $2000; to Mrs. Hill, a daughter, he gave $2000 in money; for the other $2000, he said at the time he made the deed to defendant, that the wife could not hold the property without her husband was mentioned in the deed. Defendant moved on the place, moved out when the deed was cancelled and moved back in 1853. Mrs. Zeigler rented the house in 1868; she was living there in 1869 and 1870; defendant agreed to give the land back, and Turner agreed to pay $2000 cash back as advancement for defendant's wife instead of the farm.

The plaintiff then asked the court to instruct the jury to disregard the testimony of Zeigler as to the deed of August 5th 1852, and the agreement of July 28th 1852, and all testimony by him of facts prior to Turner's death; also, as to conversations between Zeigler and Turner prior to and at the time of the delivery of the deed from Turner to Zeigler, because the deed of August 5th 1852 revested the title in Turner. The defendant objected to granting the motion, the court sustained it " so far as it relates to the conversations, acts or doings of Turner connected with or growing out of the subject-matter or thing of which he was the assignor or the assignee," and sealed a bill of exceptions for the defendant.

Gideon Hill, husband of a daughter of Turner, testified : that he was not present when the deed was made to Zeigler, nor when he made a division amongst his children, but was present when Turner gave some money to Mrs. Zeigler and witness's wife ; Turner paid money to witness's wife, and said he would give Mrs. Zeigler $2000 in the farm. Turner said he took the land back; the conversation was the year before Turner died.

The defendant then gave in evidence the deposition of Mrs. Zeigler. She testified that she claimed to own the property as her

[Zeigler *v.* Shomo.]

own separate property, and that she derived it from her father as her share of his estate.

Thomas Hess testified : that Turner told him that he had given the farm to his daughter for an inheritance.  This was in the last year of his life.

The plaintiff, in rebuttal, gave in evidence: agreement dated May 15th 1851, between Turner and wife of the one part, and E. W. Zeigler of the other part, reciting that Turner and wife had on the same day granted to "the said Elijah W. Zeigler in fee," the land in dispute and "do by these presents assign," &c., to him all their live stock and farming utensils, except, &c., Zeigler having agreed to maintain them during their lives.  "Now the condition of this obligation is such" that Zeigler should allow Turner and wife two rooms, &c., and shall deliver to them yearly wheat and other articles specified, and in case of the death of either should deliver to the other one half of the articles named to the survivor, keep a cow for them, &c., with other privileges ; and Zeigler bound himself not to sell the land without their consent, &c.

Also, under objection and exception, an agreement dated February 26th 1853, between Zeigler and Turner by which Turner agreed to give Zeigler "his farm, one cow," and a number of other articles of stock, farming utensils, grain, &c., for which Zeigler agreed to give "his lot which he bought of J. Kleckner," with certain amounts of grain, &c., " delivered to them during their joint lives every year, &c., and in case of the death of either of them the half is to be off, and when they are both dead everything is to be and remain the said Zeigler's ; * * * the said Zeigler also agrees to return the bonds drawn by Abraham Turner and J. Kistler in favor of E. W. Zeigler worth $1500, and all former agreements are hereby declared void and of no effect and to be cancelled at the expense of Abraham Turner."  Endorsed on this agreement was a receipt by Turner for " $189.59, the balance in full."

The following also was endorsed :—

" It is further agreed by the subscribers, that while a former agreement is on record that so much of the old or former agreement which does not agree with the within agreement, shall be crossed or cancelled at the request or instruction of Abraham Turner, and that the said Turner shall then keep the old agreement as a copy of this.

E. W. ZEIGLER
ABRAHAM TURNER."

There was other evidence for the purpose of showing the ownership of the premises, and who was in possession when the writ was served.

A number of points were submitted by each party.

The jury found for the plaintiff.  The defendant took a writ

[Zeigler *v.* Shomo.]

of error, and assigned a large number of errors, amongst which were:—

2. Admitting in evidence the record of the assignment, John P. Hobart, register, to Jacob H. Pyle, assignee.

3. Admitting in evidence the deed from Jacob H. Pyle, assignee, to William D. Shomo.

5. Striking out the testimony of E. W. Zeigler, as above-mentioned.

*G. E. Farquhar* and *F. W. Hughes* (with whom were *O. P. Bechtel* and *J. W. Ryon*), for plaintiff in error.—A copy of the record of the deed from the register to the assignee was not admissible, not having been acknowledged or proved as required by Act of May 2d 1715, sect. 2, 2 Sm. Laws 94, 1 Br. Purd. 460, pl. 10 ; the recorder therefore had no right to record it : Stonebreaker *v.* Short, 8 Barr 155. Both parties claiming under Turner the proviso of.the Act of April 15th 1869, sect. 1, Pamph. L. 30, 1 Br. Purd. 624, pl. 16, does not apply : Karns *v.* Tanner, 16 P. F. Smith 305.

*James Ryon* and *B. W. Cumming* (with whom was *M. Strouse*), for defendant in error.—The Bankrupt Act of 1867, sect. 14, requires the assignment of the register to be recorded in every state where a conveyance of bankrupt's lands ought by law to be recorded.   Loose delarations of the holder of a legal title that it is held in trust for another are inadmissible : Cowden *v.* Oyster, 14 Wright 373.   Declarations of the person who created the trust, made in the absence of the trustee, are not alone evidence to establish it : Tritt *v.* Crotzer, 1 Harris 451 ; Edwards *v.* Edwards, 3 Wright 378.   The expressions must be contemporaneous with act of disposition or in contemplation of it : Kilpin *v.* Kilpin, 1 Myl. & K. 537 ; Hill on Trustees 2 : Sugden on Vendors 131. Declarations of an insolvent husband are not evidence to prove that property was purchased with his wife's money : Bradford's Appeal, 5 Casey 513.

Mr. Justice Gordon delivered the opinion of the court, October 11th 1875.

The deed of assignment, John P. Hobart, register in bankruptcy, to Jacob Pyle, assignee of Elijah W. Zeigler, not having been acknowledged according to the requirements of our Acts of Assembly, was not a fit subject for record, and hence the admission in evidence of the copy thereof, appearing upon the recorder's book, was erroneous.   True, the Act of Congress requires these deeds of assignment to be recorded in every office of registry of deeds in the United States, where a conveyance of any lands owned by the bankrupt ought to be recorded, but, as it does not provide any

mode of authentication, it follows that the mode prescribed by the several states must be pursued. We are not, however, prepared to reverse for this error, as we do not think the paper had any significance in the case, and hence its admission was productive of no harm. Had the assignee made the sale on his own motion this deed would have been all important, as without it there would have been no warrant for such sale. But his action, in the case presented, is under and by virtue of the authority of the District Court of the United States. Where the property of the bankrupt is encumbered, or where the title thereto is in dispute the assignee has no power to sell except under the order and direction of said court. Hence, in such case, it is this order, and not the deed of the register, which empowers the assignee to act: Rev. Stats. U. S., § 5063; In re Graves, 1 Bank. Reg. 19; In re Salmons, 2 Id. 19. The inquiry, then, is one limited to the question of the jurisdiction of the above-named court; about this, however, there is and can be no dispute. For not only has it such jurisdiction, but from the moment of the commencement of proceedings in bankruptcy the property and estate of the bankrupt are in the custody of that court, and its jurisdiction over them is superior and conclusive: Bump's Bankruptcy 152 and 153, and authorities there cited. It follows, that the decrees of that court, upon the subject-matter in hand, are final and absolute. We have, further, the petition of Pyle the assignee, setting forth the fact that the title of Zeigler to the property therein described was disputed, and praying for an order of sale; the approval thereof by the register; the return and report of sale; the decree of the court confirming the same, and the deed to Shomo in pursuance of said decree. Thus we not only find the general jurisdiction ample, but we also find the proceedings necessary to bring that jurisdiction to bear upon the special case. The purchaser having discovered this condition of affairs was bound to look no further. As is said in McPherson v. Cunliff, 11 S. & R. 432, with reference to Orphans' Court sales: "The purchaser is not bound to see further back than the order of the court; he is not to see whether the court was mistaken in the facts of debts and children; his contract is in truth with the court." So we say as to the case in hand; Shomo was not bound to look beyond the order of the District Court to see whether every particular had been complied with in the appointment and qualification of the assignee; his contract was, in fact, with the court, and as it had ample power over the subject-matter, he, as its vendee, took whatever title there was in Elijah W. Zeigler at the time of the act of bankruptcy.

The deed, then, being good, the question turns upon Mrs. Zeigler's right of possession, for it cannot be pretended that Zeigler himself can defend against the vendee in bankruptcy. This alleged right of possession in the wife, depends upon whether she had or

[Zeigler *v.* Shomo.]

had not title to the premises in controversy. If she had no title, her possession was that of her husband and the defence rightly failed. Upon this branch of the case, a number of exceptions have been taken to the ruling of the court below. There is but one, however, which we deem important to consider. It is the one raised by the fifth specification, and which excepts to the refusal of the judge to submit to the jury the testimony of Zeigler detailing the declarations of Turner in his lifetime, concerning the vesting of an alleged trust in Mrs. Zeigler at the time of the execution of the deed of 1851, from Turner to Zeigler, as well as some subsequent declarations of the same character, which occurred in 1853, at or about the time of the cancellation of the reconveyance of 1852, Zeigler and wife to Turner. We are inclined to accept the ruling upon this point as right. Not, indeed, because Zeigler was incompetent to prove the facts stated, for we do not think the case is one within the exception of the Act of 1869, but because the evidence proposed was not sufficient to establish a trust estate in Mrs. Zeigler as against the vendee of the assignee. If we isolate the transaction of May 15th 1851, and consider it apart from the transactions of 1852–3, we are at least left in doubt as to whether Turner intended to vest in his daughter an interest in the land, or to abate one half of the purchase-money by way of advancement. We think the latter the better opinion, for if Turner intended to vest in Mrs. Zeigler an interest in the realty it is remarkable that her name is not mentioned in any of the papers. This however is consistent with the supposition of an abatement of the purchase-money by way of an advancement or gift, either to her separately or to her and her husband jointly. In this state of uncertainty a chancellor would refuse to decree a conveyance of the premises in dispute to Mrs. Zeigler, and, it follows, that the admission of the testimony proposed would have availed the defendant nothing, as the plaintiff would still have been entitled to a peremptory instruction in his favor. But, by the deed of Zeigler and wife to Turner, August 5th 1852, the previous arrangement, whatever its character had been, was annulled, and when the equity was revested in Zeigler by the agreement of February 26th 1853, it was limited by no trust to any one. It is true Zeigler says that at the time of the cancellation of the deed of 1852, after the execution of the articles of 1853, the parties intended to restore things to the state they occupied previously to the execution of the last-named deed. But testimony so slight as this from an interested party, and in the face of writings solemnly executed, in which a full and ample consideration is represented as passing from the vendee to the vendor, is wholly insufficient to abrogate or modify the written contract of the parties. To permit such a result would be to dig away the solid foundations on which our Pennsylvania land titles rest, and to substitute therefor such as might be con-

[Zeigler *v.* Shomo.]

structed for the occasion, by the interests of parties or the uncertain and often partial memory of witnesses. But the uncertainty and confusion are increased when we come to consider the acts and testimony of Mrs. Zeigler. Giving all the force possible to the testimony of Hill and Zeigler, and the interest of Mrs. Zeigler in the premises extended but to one half thereof, and that arose by virtue of the arrangement of 1851. She, however, in her notice to the assignee, March 13th 1869, claims, that by virtue of the deed of August 5th 1852, the title to the property revested in Abraham Turner, and, notwithstanding the subsequent cancellation thereof, the title still continued to be so vested, and that in the said property Elijah W. Zeigler had no interest whatever. Then, in her testimony, she claims the title by virtue of a gift from her father, and as her share of his estate. This piece of evidence does not inform us when or how this gift was made, and it ignores entirely the agreement of February 1853, which left nothing in Abraham Turner either to sell or give away, except a bare legal estate valuable to no one unless, perchance, to Turner's widow, as a means of enforcing her maintenance as provided for in that agreement. After such allegations as these, by the chief party in interest, the testimony with reference to a trust looks, to us, like an after-thought seized upon under the stress of circumstances to bolster up a bad case. Judgment affirmed.